AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.  3:18 mj 664 |
| 66 Anna Street, Dayton, Ohio | ) | |
| | ) | SHARON L. OVINGTON |

**RICHARD W. NAGEL**
**CLERK OF COURT**
**2018 SEP 28  PM 3: 53**
**U.S. DISTRICT COURT**
**SOUTHERN DIST. OHIO**
**WESTERN DIST. OHIO**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

66 Anna Street, Dayton, Ohio, which is further described and depicted in Attachment A.

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(1) | Possession of a firearm after having been previously convicted of a felony offense |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Timur J. Housum, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____09/28/2018_____

_____
*Judge's signature*

City and state:  Dayton, Ohio

Sharon L. Ovington, United States Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The location to be searched is the residence, curtilage, and outbuildings located at 66 Anna Street, Dayton, Ohio (hereinafter "**TARGET RESIDENCE**"). The **TARGET RESIDENCE** is depicted in the photograph below.



ATTACHMENT B

ITEMS TO BE SEIZED

1. Any recordings or recording equipment from any surveillance equipment found in or attached to 66 Anna Street, Dayton, Ohio (described and depicted in Attachment A).
2. Any evidence relating to the possession, purchase, use or transfer of firearms or ammunition by BRUCE LONG.

# AFFIDAVIT

I, Special Agent Timur J. Housum ("Affiant"), being duly sworn, depose and state the following:

1.     I have been employed with the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since July of 2015.  As a part of my training with the ATF, I graduated from the Federal Law Enforcement Training Center, Criminal Investigator School, located in Glynco, Georgia.  I graduated from the ATF Special Agent Basic Training Academy, located in Glynco, Georgia, in February of 2016. I am currently assigned to an Organized Crime Task Force that investigates criminal organizations in the Southern Judicial District of Ohio.   Prior to my employment with ATF, I was an Officer with the Uniformed Division of the United States Secret Service and was employed in this position from February of 2011 through July of 2015 where I received additional training. I have been involved in numerous investigations of Federal firearms and narcotic violations.  These investigations have resulted in the arrest and conviction of criminal defendants.

2.     I make this affidavit in support of a criminal complaint and arrest warrant for **Bruce Long ("LONG")**, for a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Felon in Possession of a Firearm).

3.     I make this affidavit from personal knowledge based on my participation in this investigation, including witness interviews and reports by myself and/or other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

4.     On or about September 27, 2018, at approximately 1828 hours, Dayton Police Officers Adam Sharp and Officer Gary Roesser were dispatched to Second Street/Anna Street on a shots fired call with reports of 7-8 gunshots heard in the area. Dayton Police Dispatched received several other shots fired calls in the area and are listed below: At approximately 1656 hours, reports of shots fired near 114 Lorenz Avenue approximately 6-7 shots. At approximately 1811 hours near 106 Lorenz Avenue, approximately 15 shots fired.

5.     Upon arrival to the area Officers began canvassing the area in an attempt to locate a crime scene. Officers were flagged down at the intersection of Second Street and Lorenz Avenue by a male identified as Lamar Irvin. Irvin stated he was just shot at after walking to his uncle's house, located at 102 Lorenz Avenue, by an unidentified black male carrying a rifle. Irvin further described the individual as a black male approximately 6'0" tall, dark skin, approximately 40-50 years of age, and was wearing a black coat and black hat. Irvin stated that the individual was crouched down walking towards him with the gun pointed at him in a military shooting position. Irvin further stated that the individual was shooting from a position near the

1

corner of Second Street and Anna Street, later identified as in front of 70 Anna Street. Irvin stated that the individual shot several times in his direction and struck the residence of 102 Lorenz Avenue.

6.      Officer Roesser spoke to the resident of 102 Lorenz Avenue, later identified as Michael Whitlow. Whitlow stated he had heard gunfire in the immediate area at different times since approximately 1400 hours. Whitlow went on to state that he had heard gun shots at approximately 1600 hours and noticed the front of his house, and the south side of his house were hit with bullets.

7.      Officers check the area of Second Street and Anna Street for gunfire and spent casings. Officer recovered several casings of 7.62 caliber ammunition in the grass and on the sidewalk just north of 70 Anna Street. Officers noted that the residence of 70 Anna Street had several cameras mounted on the outside of the residence.

8.      During the course of investigation Officer Sharp was approached by a male wishing to remain anonymous, who stated the individual shooting went into a white house on Anna Street, and further described the residence as the second house from the corner. The male pointed to the residence which was later identified as 66 Anna Street ("**Target Residence**"). The black male described the individual as a dark skinned black male, about 6'00"-6'02", approximately 180-200 pounds and was last seen wearing a dark colored jogging suit.

9.      Officer Sharp knocked on the front door of **Target Residence**. LONG answered the door. LONG answered the door wearing a black t-shirt and black sweat pants, and was noted by officers on scene as matching the description of the individual who was shooting. Officers asked LONG if he had heard gunshots outside, to which LONG replied that he heard people arguing outside and it was a robbery. When asked how he knew it was a robbery, LONG stated "that it just was." LONG further stated that he was tired of all the graffiti and drug dealers in the neighborhood. LONG also stated to officers that he was going to take matters into his own hands because officers were not handling the issues in the neighborhood. At this time, officers observed LONG began to get agitated when speaking about the issues he perceived in the neighborhood. LONG stated to officers that he had recently moved back to Ohio from Kentucky and that he owned both **Target Residence** and 70 Anna Street. LONG stated that he grew up in a military family and he was a "military brat." At this time, officers placed LONG in custody and asked for consent to search the residence; LONG refused consent to search. LONG was placed in the back of the police cruiser and stated to officers that it did not matter if he went to jail for 10 years, that he was going to get revenge.

10.     Dayton Police Detectives were called to the scene and attempted to interview LONG at the Dayton Police Department Safety Building. LONG refused to answer any questions and requested his lawyer. Detectives executed a search warrant for **Target Residence**. During the search, detectives recovered 8 firearms (including a Glock, model 23, .40 caliber pistol; and Glock, model 22, .40 caliber pistol) with associated magazines and accompanying ammunition. Among the 8 firearms was also an AK-47 style rifle that fires 7.62 caliber ammunition, consistent with the shell casings collected near 70 Anna Street. Detectives noted that they

2

observed surveillance cameras set up on the residence of **Target Residence** during the execution of the search warrant. Pursuant to the state search warrant for **Target Residence**, police were authorized to seize cameras or digital devices (among other items such as firearms). However, based on conversation with one of the detectives, Affiant understands that they did not thoroughly searched for any recording equipment related to the surveillance system.

11.     Affiant has determined that LONG has been previously convicted of an offense punishable by greater than one year in prison based on a review of certified conviction documents. Specifically, LONG was convicted on or about November 25, 2009, in Montgomery County, Ohio, Common Pleas Court, Case Number 2009 CR 01582/02, of "Possession of Cocaine (F4)."

12.     On September 28, 2018, Special Agent Chris Reed (an ATF Interstate Nexus Expert) confirmed that the Glock, model 23, .40 caliber pistol, and Glock, model 22, .40 caliber pistol recovered during the execution of the search warrant had traveled in or affected interstate commerce.

13.     Notwithstanding the fact that an earlier search was conducted at **Target Residence**, it appears that a surveillance system recording device may have been in the residence and not seized. If the surveillance system was recording, and a recording device is present in the **Target Residence**, footage of LONG entering/exiting the residence may still be on the system, particularly on the day of the shooting. Affiant requests a search warrant for the **Target Residence** to search for the items listed in Attachment B which relate to a violation of 18 U.S.C. § 922(g)(1).


**Further affiant sayeth naught.**


**Timur J. Housum**
**Special Agent, ATF**
**Dayton, Ohio**


**Subscribed and sworn to before me on this 28th day of September, 2018.**


**Honorable Sharon L. Ovington**
**United States Magistrate Judge**

3